J. I. CASE COMPANY *v.* SANDEFUR; SANDEFUR, ADMINISTRATRIX, ETC.

[No. 30,572.   Filed April 8, 1964.]

214

*Wilbur F. Pell, Jr.*, of Shelbyville, *Hugh E. Reynolds, Jr.*, and *Locke, Reynolds, Boyd & Weisell*, of counsel, of Indianapolis, for appellant.

*George R. Tolen, Jr., Donald L. Brunner* and *Brunner, Brown & Brunner*, of counsel, of Shelbyville, for appellee.

ARTERBURN, J.—This case comes to us on transfer from the Appellate Court under Acts 1901, ch. 247, §10, p. 565; 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Repl. See *J. I. Case Company* v. *Sandefur* (1963), 193 N. E. 2d 647 for opinion of Appellate Court.

This is an appeal from a judgment in a damage suit brought by Loid Sandefur in 1960 for personal injuries resulting from the use of a combine manufactured by the J. I. Case Company in June, 1954. The combine had previously been owned by one Knoy and was sold to Sandefur in February, 1957.

The action is based upon an alleged latent defect in the covering or lid housing the auger. It is stated that through latent defects the covering or lid gave way when Sandefur stepped on it while the machine was in operation and his foot was caught in the auger and he was thereby injured.

In September, 1960, before the case was tried, Sandefur died from causes other than that of the accident. His wife, as administratrix, was substituted as a party plaintiff without objection. Upon trial,

judgment was rendered by the trial court for the plaintiff in the amount of $5,678.05. Upon appeal to the Appellate Court, in a short opinion by Clements, Judge, the court reversed the judgment on the ground that the administratrix could not be substituted as a party plaintiff under the authority of *Malone* v. *Conner* (1963), 135 Ind. App. 167, 189 N. E. 2d 590. See also: *Stewart* v. *Marson Construction Corporation* (1963), 244 Ind. 134, 191 N. E. 2d 320.

The appellee, on petition to transfer, complains that the Appellate Court decision was rendered on this point which was not presented in the trial court or briefed or argued on appeal; that there was no opportunity for the parties to present their views upon this unraised question; and that they have been as a result, unfairly dealt with on appeal.

It is always a dangerous and hazardous matter for any court to attempt to determine an issue without the help of the counsel in the cause and without giving the parties an opportunity to present their respective viewpoints. Such procedure is to be avoided if at all possible. What happened here is proof of that statement. The case cited by the Appellate Court, as well as the case of *Stewart* v. *Marson Construction Corporation, supra,* decided by this court, does not support the Appellate Court's reversal. In the cited cases relied upon, a prompt objection was made to the continuance of the action by the substituted party in place of the deceased plaintiff. In one case it was by demurrer in the trial court. In the other case it was by objections filed in our court on appeal at the time of the death of the appellant, when the substitution of parties was petitioned.

In the case before us no objection was made at any time in the proceedings to the substitution of the administratrix for the deceased party, Loid Sandefur. In fact, the appellant company suggested, after the death of plaintiff, the substitution of the administratrix as a party. During the trial the appellant company relied from time to time upon the statute in question in making objections for the limitation of damages.

We have held the survival statute, Burns' §2-403 (1946 Repl.), is applicable to the time of the accrual of the action, rather than with reference to the time of the death of the plaintiff, and if objections had properly been made at the time to the substitution of parties, the cases referred to would have been applicable. However, the appellant company waived any objections and raised none in the trial and never did question the right to continue the action.

To the surprise of all parties, the Appellate Court decided the appeal upon this technical point without considering the merits of the case.

So long as a court has general jurisdiction of the subject matter to which a case belongs, a defendant may waive his right to object to the jurisdiction by failing to make timely and specific objections thereto. The objections should be raised at the earliest opportunity, I. L. E., Courts, §7, p. 417; *Patterson, Administratrix* v. *Scottish-American Mortgage Company* (1886), 107 Ind. 497, 8 N. E. 554.

Far too often there is an inclination in a law suit to attempt to convert a legal issue into one of "jurisdiction" and from that point contend all actions of the court are void, and that the question of jurisdiction may be raised at any time or that the proceedings are subject to collateral attack and are a matter for origi-

nal writs in this court. We look with disfavor upon points raised for the first time on appeal in the higher court or in original actions without first raising the issue with specific objections thereto at the first opportunity in the trial court.

The trial court had jurisdiction of the subject matter in this case when it was filed. The right of a party to maintain a suit as a plaintiff or substitute plaintiff must be raised by a proper pleading or motion questioning such authority at the first opportunity, or the objection is waived. In one of the cases cited above the point was raised by a demurrer to the complaint, *Malone* v. *Conner* (1963), 135 Ind. App. 167, 189 N. E. 2d 590. In another by a motion to dismiss, *Stewart* v. *Marson Construction Corporation* (1963), 244 Ind. 134, 191 N. E. 2d 320.

The Appellate Court has erred and we must therefore grant transfer in this case.

We come next to the merits of the appeal. The evidence is undisputed in the following particulars:

On October 4, 1958, Sandefur was in the field with the combine when his wife and daughter heard him scream for help. They saw him standing on the machine in a position which his wife said was over the lid or top covering the auger. When they got to him in the field, he was off the machine, sitting by the side of the road holding his injured foot and ankle. When the machine was examined, witnesses testified that the cover over the auger, which might be described as a wooden lid with hinges thereon, was loose and sticking down into the auger trough; there was blood on the auger and the frame and Sandefur's shoe with blood on it was on the ground.

Mr. Tolen, an attorney whom the plaintiff had consulted, testified that he examined the combine about

four months later and found the screws which hold the hinges to the board had been ripped and torn from the wood. However, the stripper board, from which it is claimed these screws were torn, was missing at time of trial and not produced at the trial, although the lid to which the hinges were attached and which came loose and upon which it is claimed Sandefur was standing, was placed in evidence at the trial. Mr. Tolen also testified that when he placed the lid back on the auger trough as a cover, there was a clearance space of approximately half an inch between the underside of the lid and a safety catch which was supposed to support it. Evidence showed that good mechanical construction required that there should have been only 1/16 of an inch space between the lid and the catch supporting it. There was testimony to the effect that this extra space (1/2 inch), when weight was placed upon the lid, would cause the lid to tear the hinge loose and allow it to slip into the trough where the auger was turning.

Since Mr. Sandefur was deceased at the time the trial took place, his version of how the accident occurred was not in evidence.

The appellant company contends that there is no evidence of how the accident happened which injured Mr. Sandefur's foot and, at most, the evidence of Mr. Tolen as to the condition of the combine and the defects with reference to the catch under the lid and the screws being pulled out, is too remote (approximately 4 months thereafter) to be of any probative value.

Considerable testimony was presented by so-called experts. Some of them stated that the lid and stripper board was made out of cotton wood and should have been made out of harder substance or metal to hold

the screws. On the other hand, a manual printed by the defendant company warned all users of the combine not to stand on the machine while it was in operation; that the power should be turned off if any attempt was made to clean or adjust any part of the machine. The plaintiff-appellee, however, offered testimony to the effect that it was necessary to stand at the place Sandefur was standing while the auger was operating in order to clean or clear the hopper and machinery of grain or obstructions. The appellee further contends that the defect in the combine was latent, unseen, and unknown to Sandefur at the time of the injury and that the heads of the screws which came loose, causing the lid to slip, did not reveal that the screws were of too small a size or imbedded in wood too soft to hold them.

Appellee's theory of the case is based primarily upon the landmark case of *MacPherson* v. *Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916 F. 696, Ann. Cas. 1916C, 440, where it was held that a manufacturer has a common law duty not based upon any privity of contract to protect third parties using the manufactured article against hidden or concealed defects and dangers therein. The Supreme Court of this state has never directly approved the principle in the *MacPherson Case,* although the matter has been before the Appellate Court and the Federal District Court. *Holland Furnace Co.* v. *Nauracaj* (1938), 105 Ind. App. 574, 14 N. E. 2d 339; *Coca Cola Bot. Wks Evansville* v. *Williams* (1941), 111 Ind. App. 502, 37 N. E. 2d 702; *McCloud* v. *Leavitt Corporation* (1949) D. C., 79 F. Supp. 286 (Purdue bleachers); *Collins* v. *Clayton & Lambert Manufacturing Co.* (1962), 299 F. 2d 362 (Citing Indiana Law); *Elliott* v. *General Motor*

*Corporation* (1961), 7 Cir., 296 F. 2d 125 (Citing Indiana Law).

We need not go into detail with reference to the facts in these cases. Suffice it to say that originally the courts generally held that there was no liability unless there was privity of contract for the negligent manufacture of a product with hidden defects. However, there sprung up through the years exceptions with reference to products that were inherently dangerous to life or health. As early as 1903, we began to find an enlargement of this exception.

In *Huset* v. *J. I. Case Threshing Mach. Co.* (1903), (8 C. C. A.) 120 Fed. 865, a set of facts very similar to those in this case existed. An employee of a farmer who had purchased a threshing machine got his foot injured when standing on the machine while operating it. In that case the court set out three main exceptions to the general rule at that time. The third exception is stated as follows:

> " . . . the rule is that one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not." *Huset* v. *J. I. Case Threshing Mach. Co., supra*, at 871.

As so often happens in the development of the common law, eventually the exceptions become the rule, and that is what has happened during the last sixty years to the principle under consideration here. We feel it is unnecessary to go into an elaborate explanation of this development. For that see: Annotations, 17 A. L. R., p. 672, or any good textbook on Torts.

As stated by the leading authorities, public policy has compelled this gradual change in the common law because of the industrial age where there is no longer the usual privity of contract between the user and the maker of a manufactured machine. On the other hand, there must be reasonable freedom and protection for the manufacturer. He is not an insurer against accident and is not obligated to produce only accident-proof machines. The emphasis is on the duty to avoid hidden defects or concealed dangers. *Campo* v. *Scofield* (1950), 301 N. Y. 468, 95 N. E. 2d 802.

This brings us to the question of the age of the machine and the lapse of time since its manufacture. We judicially know that no machine can be made perfect, nor can one last forever. It degenerates with age. There comes a time when some part wears out or breaks. It does not, as the proverbial "One-Hoss-Shay," totally disintegrate and fall apart all at one time.

No evidence was offered as to the useful life of the combine in question. Evidence was offered to show that the machine, although 5 years old, was but slightly used the first four years. Instead, the machine was kept in a shed most of the time. Its life and its physical condition is a question of fact to be determined in the trial.

It is further urged that the proper materials were not used in the construction of the combine. A manufacturer may determine the character of the materials to be used primarily for the purpose of producing or manufacturing an "economy model", as compared with a luxury model—the life of one being much less than the life of the other. Yet there are reasonable

limits on such "economy", for example: a machine may not be built with extremely weak or flimsy parts concealed by an exterior such as to mislead a user into believing it safe and stable when, in fact, it is not, thus causing a user to rely thereon, to his injury. This again is a question of fact, namely, was there a concealed defect or hidden danger to a user?

The trial court made a special finding in which it stated that plaintiff stepped on the cover on top of the auger and it gave way, permitting plaintiff's foot to get entangled in the auger, thus causing his injury. The court found that the lid failed to rest upon a brace or safety clip designed to support it; that it was a hidden defect not normally observable; that the defendant company failed to use lumber of the proper type and strength to hold the screws for the hinges; that the company failed to use the proper size screws, the size of which were hidden and were thus a latent danger; and that the injury of Sandefur was the proximate and direct result of negligence in the manufacture of the combine. The court did not make any finding that any contributory negligence existed.

Although in some respects, as pointed out by the appellant, the evidence is very scanty to support the findings of the court, we on appeal may not weigh this evidence, although we might have come to a different conclusion had we been the triers of the fact. The evidence of attorney Tolen as to the condition of the combine four months later and the position of the safety brace on the clip, without any corroborative evidence, particularly the presentation of the stripper board with a clip on it, does not give much strength to the plaintiff-appellee's case. We are, however, unable to say that it has no probative value whatever.

Appellant finally contends that certain testimony of Truman Sawyer and Richard Wagner as witnesses was improperly admitted. The first concerned injuries of a similar nature received by Sawyer in using a J. I. Case combine. There was other testimony with reference to the construction of an International Harvester combine and how it was designed, and still other testimony objected to as to whether the J. I. Case combine was properly designed. The specifications and objections, as set forth in the brief, are too general for us to intelligently consider the same. There is no transcript citation for the purpose of clarifying the matter. For the reasons stated, we cannot give consideration to these points.

It is also urged that the damages are excessive. However, upon review of the evidence, we find the trial court had sufficient basis for the sum awarded.

Judgment affirmed.

Landis, C. J., and Achor and Myers, JJ., concur. Jackson, J., concurs in result.

Note.—Reported in 197 N. E. 2d 519.