THE DEPARTMENT OF COMMERCE OF THE STATE OF INDIANA AND THE INDUSTRIAL PROMOTIONS AND DEVELOPMENT DIVISION OF COMMERCE OF THE STATE OF INDIANA *v.* JOHN A. GLICK

[No. 1-277A32. Filed February 13, 1978.]

*Theodore L. Sendak,* Attorney General, *Charles W. Vincent,* Deputy Attorney General, for appellant.

*Cline, King & Beck,* of Columbus, for appellee.

LYBROOK, J.—Defendants-appellants, the Department of Commerce of the State of Indiana and the Industrial Promotions and Development Division of the Department of Commerce of the State of Indiana, (hereinafter referred to collectively as the State), bring this appeal from a judgment in favor of plaintiff-appellee John A. Glick. Judgment was rendered in the amount of $24,000 following a trial by jury.

In its Motion to Correct Errors the State raised the following questions of error on appeal:

(1) Whether there was sufficient evidence for the jury to find that the State owed Glick a legal duty to ascertain the

legitimacy of Johnson as a consultant for an industrial firm?

(2)  Whether there was sufficient evidence for the jury to find that the acts of the State of Indiana were the proximate cause of Glick's monetary loss?

(3)  Whether the State had any duty to anticipate that a crime would be committed to the subsequent injury or loss to Glick?

(4)  Whether the trial court erred in failing to give State's tendered instruction number two?

This court has repeatedly held that when the sufficiency of the evidence is questioned on appeal, the reviewing court will not weigh the evidence but will consider only that evidence most favorable to the appellee together with the reasonable inferences to be drawn therefrom. *Jones v. Abriani* (1976), 169 Ind. App. 556, 350 N.E.2d 635.

The requisite elements of an action in neglience are (1) the existence of a duty on the part of the defendant in relation to the plaintiff; (2) the failure of the defendant to conform his conduct to the standard of care demanded by such duty; and (3) an injury to the plaintiff proximately resulting from such failure. *Palmer v. State* (1977), 173 Ind. App. 208, 363 N.E.2d 1245.

On December 27, 1971, Robert L. Johnson presented himself at the State offices of the Industrial Promotions and Development Division of the Indiana Department of Commerce, and conferred with Dan A. Manion, the Director of the Division. Johnson represented to Manion that he was a consultant for a large eastern concern interested in locating a laser research facility somewhere in Indiana. Johnson later met with the Assistant Director of the Division, Edward Hollis who helped Johnson prepare a "site location fact sheet" which was mailed throughout the State by the Indiana Department of Commerce. As communities responded to this mailing the responses were referred by the State to Johnson.

In February, 1972, Hollis arranged a meeting between Johnson and representatives of the Hope Improvement Corporation (H.I.C.) an organization of citizens of the Town of Hope, Indiana, interested in attracting business to their town. The officers of H.I.C. had responded to the State's mailing. On February 24, 1972, Hollis drove

Johnson to Hope, in State-owned vehicle, to meet with members of H.I.C. and view potential plant sites in the Hope area. Hollis introduced Johnson as a consultant or representative of an eastern corporation.

Hollis also arranged a second meeting and again drove Johnson to Hope on March 24, 1972, where Johnson represented that he would need $100,000 of local money to be used as matching funds in order to secure a fifty million dollar federal grant. When informed that this amount could not be raised, Johnson advised that the lowest figure he could accept was $25,000. Upon urging by Hollis, who stated that small communities often must put up some money to demonstrate their "good faith" to an interested company, three members of H.I.C. including Glick, gave Johnson a check for $1,000. A letter memorializing this event was typed by Hollis and signed by the three members of H.I.C., after Hollis had made handwritten notations on the letter. The three members of H.I.C. polled several other members by telephone requesting permission to advance Johnson the $1,000 from H.I.C. funds, and the group decided to go ahead, "acting through Mr. Hollis as a State Department official."

Hollis again drove Johnson to Hope on April 6, 1972, where they met with the full membership of the Hope Improvement Corporation. Hollis introduced Johnson as a representative of an eastern company and later fielded questions for Johnson from the group. H.I.C. decided to raise an additional $24,000 to go with the original $1,000 already given to Johnson in order for Johnson's company to apply for the federal grant. H.I.C. decided to use an escrow agreement whereby the contributions from persons in the community would be collected and placed in an account rather than to be given directly to Johnson.

On April 12, 1972, Johnson attended a meeting of the H.I.C. Board of Directors in Hope, without Hollis or Glick being in attendance. Johnson advised the group that the escrow agreement was not acceptable to his "client", that the $24,000 would have to be paid to him, and although he did not insist on the money immediately, he indicated that another community was interested in obtaining the project.

Manion called Glick on the evening of April 13, 1972, and asked Glick to meet with Johnson that evening because Manion did not want to see this project lost, and would appreciate anything that Glick could do to "get the project firmed up."

A meeting between Johnson and Glick was arranged on the evening of April 13, and Johnson informed Glick that if the money was not raised quickly the project would go elsewhere. Glick, who was leaving the State the next day, returned to Hope and arranged for a $24,000 note in his own name to cover a $24,000 certified check from H.I.C. to be given Johnson.

The next day, April 14, 1972, Glick met with Hollis and Johnson at the Indianapolis Airport prior to Glick's departure. Glick handed the certified check for $24,000 to Hollis who in turn gave it to Johnson. Subsequently, on his return from his trip, Glick was called by Manion and Hollis and congratulated for raising the $24,000. Glick also talked with Johnson who advised him that the federal grant was going through, and that he (Johnson) was going to set up an office in Hope, which was done.

Some thirteen days after the $24,000 check had passed, Glick received a telephone call from an Indianapolis Star Reporter who advised him that Johnson was a "con man". Upon inquiry by Glick, the County Prosecutor advised Glick that Johnson had done nothing criminal; however, Glick further investigated Johnson's activities and went to the Indiana State Police. Although Johnson was later apprehended and convicted of theft by deception, none of the money was recovered and Glick was forced to pay off the note for $24,000.

Unbeknown to Glick and H.I.C., Manion and Hollis of the Division of Industrial Promotions and Development had been making numerous inquiries concerning Johnson. Hollis found Johnson to be "peculair" in his approach and methods and thought it strange that they always met at the State Capitol and that Johnson had offered him (Hollis) a job during one of their trips to Hope. Between the first and second meetings in Hope, Hollis contacted John Hardy, the Area Development Director of Indianapolis Power and Light Company, to see if Hardy knew of Johnson. Hollis considered Hardy to be the person most likely to know prominent consultants

in the Indianapolis area; however Hardy did not know Johnson. Hollis did not consider Johnson to be "knowledgeable" as to plant site locations and in requesting precise information which was normal for active business consultants. Hollis noted that Johnson was "less thorough" than some consultants, and asked the kind of questions any "novice" would ask.

After the March 24, 1972 meeting between Johnson and H.I.C., Hollis asked the Research Division of the Indiana Department of Commerce to make a check of businesses involved in the manufacture of laser equipment because Johnson would not reveal the identity of his client other than to say the company was involved in laser manufacturing. However, the business check revealed no information.

Prior to April 14, 1972, when the $24,000 was given to Johnson, Hollis and Manion became increasingly suspicious of Johnson because he refused to divulge the name of the company he represented. They contacted the Superintendent of the Indiana State Police, requesting information about Johnson. They also met with Johnson and a purported stockholder of his client-corporation at the Indianapolis Press Club after they had insisted on some verification from Johnson. On April 11, 1972, Manion requested that a criminal arrest check be made by the Indiana State Police which was compiled on April 11 and showed that Johnson had a lengthy criminal record including convictions for theft and forgery. Although the arrest record was available on April 11, it in fact was not received until after the check was delivered to Johnson.

Despite Manion and Hollis' suspicions and Manion's request for the arrest record, on April 13, 1972, Manion repeatedly telephoned Glick's home to urge a meeting between Glick and Johnson, for the purpose of securing the project for Hope. On April 14, 1972, Hollis drove Johnson to the airport and took part in the transfer of $24,000 to Johnson. Manion and Hollis never communicated their suspicions concerning Johnson to Glick or other members of H.I.C. and never informed Glick that an arrest report had been requested.

Hollis testified that the State Department of Commerce did not have any security arrangements with regard to investigating

persons who came into the office and requested site location information, a process wherein staff members would interview the consultant or businessman to ascertain his business requirements and select a mailing list of locations in which he might be interested. Hollis stated that the State did not usually ask the consultant for any background information, but just took him at face value, and sent the information out to communities which had indicated an interest in new industry.

Manion told an investigator that the basic purpose of the State's Industrial Promotion and Development Division was to "promote community activity" and "even if they were to detect something going wrong, that they would not stop it, because they felt it was more important for the community to get involved in a project where they were going to, hopefully, bring in some sort of industry or business."

## I.

The first question raised by the State is whether there was sufficient evidence for the jury to find that the State owed Glick a legal duty to ascertain the legitimacy of Johnson as a consultant for an industrial firm. The State argues that the Division of Industrial Promotions and Development of the Department of Commerce did not undertake a special obligation towards Glick as an individual, but merely had a general duty under the statute which created the Division of Industrial Promotion and Development, to assist communities and promote industrial development.[1]

This court has consistently held that the State is liable for the negligence of its employees where employees are performing ministerial tasks. *Board of Commissioners of Delaware County v. Briggs* (1975), 167 Ind. App. 96, 337 N.E.2d 852; *Roberts v. State* (1974), 159 Ind. App. 456, 307 N.E.2d 501. In the *Briggs* decision, the county was held liable for negligently maintaining road signs after the decision to erect them was made. Quoting from the early decision of *Adams v. Schneider* (1919), 71 Ind. App. 249, 124 N.E. 718, the *Briggs* court held:

"A duty is discretionary when it involves on the part of the

1. IC 1971, 4-4-3-10 (Burns Code Ed.).

officer to determine whether or not he should perform a certain act, and, if so, in what particular way, and in the absence of corrupt motives in the exercise of such discretion he is not liable. His duties, however, in the performance of the act, *after he has once determined that it shall be done,* are ministerial, and for negligence in such performance, which results in injury, he may be liable in damages." (Emphasis added).

The Industrial Promotions and Development Division of the Department of Commerce was entrusted by statute with the duty to:

"(c)  Facilitate contracts between community improvement corporations and industrial and commercial concerns seeking to locate or expand in Indiana." IC 1971, 4-4-3-10 (Burns Code Ed.).

Pursuant to the mandates of the statute, the staff members of the Department of Commerce disseminated the information given to them by Johnson and not only placed him in contact with the Hope Improvement Corporation but actively took part in negotiations between Johnson and H.I.C. officials, including Glick. Under the well settled Indiana rule, the actions of Manion and Hollis as staff members of the State Department of Commerce were ministerial in nature from the point at which a decision was made to put Johnson in contact with H.I.C. and its officers, and the State may be liable for any negligence on the part of its agents in performing their ministerial duties.

## II.

The State next alleges that there was not sufficient evidence for the jury to find that the acts of the State were the proximate cause of Glick's monetary loss. The State urges that Glick's injury was the result of his failure to heed a resolution of the Board of Directors of H.I.C. which provided that no money was to be transferred to Johnson without a protecting escrow agreement.

Breach of duty and proximate cause are questions usually determined by the trier of fact. Only in cases where the facts are undisputed and lend themselves to a single inference or conclusion will questions of breach of duty and proximate cause become questions of law for the trial court. *Petroski*

*v. Northern Indiana Public Service Co.* (1976), 171 Ind. App. 19, 354 N.E.2d 736. See also: *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *Dreibelbis v. Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634.

The record shows that there was evidence sufficient for the jury to hold that the agents of the State were negligent in their actions where they were so suspicious of Johnson that they questioned outside sources concerning Johnson's status as a "consultant". Repeatedly, but unsuccessfully, they sought to discover the name of Johnson's corporate client, and even asked State Police assistance, yet continued to urge Glick, as a director of H.I.C., to secure the "project". Without consulting the available State Police report, they took part in the actual transfer of $24,000 to Johnson, despite their knowledge of the H.I.C. resolution requiring the escrow agreement. The jury could have found from the evidence presented that Glick would not have made the transfer but for the active participation of the State in promoting this project.

### III.

The State now claims that it was under no duty to anticipate that a crime would be committed resulting in subsequent injury or loss to Glick.

The trial court gave the following instruction to the jury without an objection by the State at the conclusion of all the evidence:

"Every person is under a duty to exercise his senses and intelligence in his actions in order to avoid injury to others, and where a situation suggests investigation and inspection in order that its dangers may fully appear, duty to make such investigation and inspection is imposed by law."

In light of the evidence above, which shows that the State was not only suspicious of Johnson, but actively investigated his background and prior arrest record through the Indiana State Police, we think that the State had reason to be suspicious of Johnson. It was also reasonably foreseeable that H.I.C. and the investors, including Glick, were in danger of losing their money, particularly where the State's suspicions were not communicated to Glick and the other members of H.I.C.

## IV.

Finally, the State asserts that the trial court erred in failing to give the State's tendered instruction No. 2 which read as follows:

"There was no statutory duty on the Department of Commerce of the State of Indiana or the Industrial Promotions and Development Division of the Department of Commerce of the State of Indiana to investigate the background or authenticity of anyone seeking their services."

It is well established that even if an instruction is a correct statement of the law, error cannot be predicated upon the trial court's refusal to give it if its subject matter is adequately covered by other instructions. *Frankfort v. Owens* (1976), 171 Ind. App. 566, 358 N.E.2d 184; *Chrysler Corp. v. Alumbaugh* (1976), 168 Ind. App. 363, 342 N.E.2d 908.

The instruction tendered by the State if given could cause some confusion in view of the holdings in *Roberts v. State, supra,* and *Board of Commissioners of Delaware County v. Briggs, supra,* which hold that once a decision to act is made, the State through its employees is under a duty to carry out its ministerial duties and actions pursuant thereto in a reasonable and prudent manner.

The trial court instructed the jury as to (1) the statute governing the establishment of the Industrial Promotion and Development Division, IC 1971, 4-4-3-10 (Burns Code Ed.), (2) that the State of Indiana is responsible for the tortious acts of its agents or employees when committed in the scope of their employment; and (3) as well as the general duty that every person is to exercise his senses and intelligence to avoid injury to others, and where a situation suggests investigation and inspection in order that its dangers may fully appear, duty to make such investigation and inspection is imposed by law.

In *Chrysler Corporation v. Alumbaugh, supra,* the Court of Appeals found there was no error in the trial court's refusal to read an instruction advising the jury of the duties which defendant-appellant did *not* owe where the subject matter was properly covered in other instructions by the trial court. Under the

circumstances, we think that the State's tendered instruction No. 2 would have served only to confuse the jury and was correctly refused in light of the other instructions which adequately covered the duty owed by the State to Glick.

Finding no error, we affirm the judgment of the trial court.

Affirmed.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 372 N.E.2d 479.