**Carolyn L. BRIDGEWATER, Appellant (Plaintiff Below),**

v.

**ECONOMY ENGINEERING COMPANY, Appellee (Defendant Below).**

No. 4–683A198.

Court of Appeals of Indiana, Fourth District.

May 31, 1984.

Rehearing Denied July 11, 1984.

E. Davis Coots, Coots, Henke & Wheeler, Carmel, for appellant.

Hugh Watson, Randall R. Riggs, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee.

MILLER, Judge.

Carolyn Bridgewater's negligence action against Economy Engineering Co. (Economy) resulted in summary judgment being granted in favor of Economy. Bridgewater instituted her suit against Economy because it had manufactured the high-lift platform from which her husband had fallen to his death. Bridgewater alleged Economy employed defective safety devices on this particular model of platform, necessitating their replacement by equally defective devices by Detroit Diesel Allison (Allison), her husband's employer. The trial court's ruling was based on alternative grounds: (1) Economy's manufacturing defect was not, as a matter of law, the proximate cause of Bridgewater's husband's death for lack of foreseeability; (2) the defect, if such there was, was open and obvious, thereby requiring a finding the platform was not defective or unreasonably dangerous (again, as a matter of law).

Both these grounds are improper for purposes of summary judgment in this case, and we reverse and remand for further proceedings.

FACTS

Bridgewater's husband was employed as a maintenance man at Allison on September 23, 1977, the date of the accident. He and his working partner, Harold Stoughton, were removing duct work from the ceiling of the plant, approximately twenty feet from the floor, and were therefore using a high-lift platform purchased by Allison twenty-one years earlier, called a Portable Utility Ladder by its manufacturer, Economy. The deceased was performing the overhead work while Stoughton remained on the floor to move the ladder from location to location. The evidence and testimony presented herein are less than lucid, but apparently the deceased had partially descended the ladder for another move. Stoughton rolled the ladder to a new spot, turned away and took a few steps. He heard the deceased shout, "It came loose," and turned to see him fall upon a mobile sheet metal truck and then to the floor. He was not wearing his hard hat and died of head and back injuries. The only apparent cause for the accident was the collapse of the guardrails surrounding the elevated working platform, but that issue is muddied because it is unclear whether the deceased was actually on the working platform or whether he was ascending the ladder when he fell. The principal point of convergence on appeal, however, is upon whom to rest the responsibility for the collapse of the guardrails.

The Portable Utility Ladder, sold to Allison in 1956, combined features of a ladder and a scaffold and provided an approximately six-foot square working platform at its apex for overhead work. The unit could be telescoped to desired heights through the use of a hoist mechanism. The guardrails surrounding the work platform formed a frame around the worker when they were properly erected. One pair of rails, on opposite sides of the platform,

were of self-supporting construction, i.e. two uprights with a crossbar. Attached to one of these was the other pair of rails, these being detachable crossbars hinged upon the one stable side rail and designed to be attached to the opposite stable rail by inserting safety devices in the side rails to prevent the crossbars from slipping off. Once the safety devices were in place, the guardrails formed a cage surrounding the platform. An additional feature on this model was the collapsible nature of the rails where the ladder's mobility under low heights was increased. The stable side rails were hinged to fall down and away from the platform once the safety devices were removed from the side rails and the crossbars were detached. The guardrails were discovered in this position after the accident. Bridgewater's supposition is that the devices holding the crossbars to the one side rail were defective and gave way, thereby causing her husband's death, either as he stood on the platform or as he grasped them to hoist himself up. However, the issue becomes clouded here because Allison had replaced Economy's safety feature, which held each crossbar in place, with a device of its own.

Economy's safety device for holding the detachable crossbars in place was a pair of metal pins attached to their respective bars by chains. Sometime between 1967 and 1972, all the pins on the Portable Utility Ladders at the Allison plants in Indianapolis were replaced. The reason for so doing was because the original pins allegedly had a tendency to break or become lost and one employee had supposedly been injured when a faulty pin had given way. (There is evidence that some Allison employees thought the change unnecessary.) In place of the pins, Allison devised a safety latch to put at the ends of the side rail where the pins had originally been. Bridgewater alleges these latches on the subject platform were defective and gave way, thereby causing the guardrails to collapse without warning. However, after the accident, the still operable safety latches were tested with the guardrails in place and held properly. Thus, there was no observable explanation for the latches failing if indeed they did.

Bridgewater brought a three-count complaint, sounding in negligence, against Economy and Metco Materials Handling, Inc. (the distributor and seller of the Economy ladder). In November, 1982, the trial court granted summary judgment in favor of Metco Materials Handling, Inc., and in March, 1983, the same was granted to Economy.

## DECISION

Our standard of review when a summary judgment is at issue is quite clear:

"Under Ind.R.Tr.P. 56(C), a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If there is any doubt as to the existence of a factual issue, the motion should be resolved in favor of the non-mover ... In ascertaining the existence of any doubt, the contents of all pleadings, papers and affidavits are liberally construed in favor of the non-movant ... Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome ... Even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action."

*Woodward Insurance Inc. v. White*, (1982) Ind., 437 N.E.2d 59, 62; *Richardson v. Citizens Gas & Coke Utility*, (1981) Ind. App., 422 N.E.2d 704. As we peruse the pleadings and depositions filed herein, we must compare their contents with the standards cited above. Having done so, we find the trial court erred with respect to both its asserted grounds for judgment.

### Proximate Cause

Bridgewater has presented us with one of the most labyrinthine negligence issues

we have seen. Pared to its essentials, her cause of action rests on the basic proposition that Economy was negligent in the design of its safety device (the metal pins) holding the platform rails in an upright position. In so designing, she asserts Economy should have reasonably foreseen that Allison would replace those pins with an equally defective safety device of its own. In other words, she is apparently arguing the basic construction of a platform, guarded by collapsible rails, was negligent. Without commenting on whether she has sufficient evidence to sustain this claim, we find the trial court definitely committed error in granting Economy's summary judgment on the basis of lack of proximate cause.

■■■ Proximate cause is the element of any negligence action that links one party's breach of duty to the injury of the complaining party. *See, e.g., Petroski v. Northern Indiana Public Service Co. [NIPSCO]*, (1976) 171 Ind.App. 14, 354 N.E.2d 736. As for that element itself,

> "it is well settled that for a negligent act or omission to be a proximate cause of injury, the injury need be only a material and probable result thereof; and the consequence be one which in the light of circumstances should reasonably have been foreseen or anticipated."

*Elder v. Fisher*, (1966) 247 Ind. 598, 605, 217 N.E.2d 847, 852. This particular case has the added feature of more than one possible causative action—Allison's alleged negligence supposedly compounding Economy's. Such raises questions of concurrent and/or intervening causes. However, proximate causation, as a basic premise, is still the crux of the problem, and proximate causation is generally a question of fact and, thus, not amenable to summary judgment. *Department of Commerce v. Glick*, (1978) 175 Ind.App. 449, 372 N.E.2d 479; *New York Central Railroad Co. v. Cavinder*, (1965) 141 Ind.App. 42, 211 N.E.2d 502. "Only in cases where the facts are undisputed and lend themselves to a single inference or conclusion will questions of ... proximate cause become questions of law

for the trial court." *Petroski v. NIPSCO*, 171 Ind.App. at 24, 354 N.E.2d at 744. Bridgewater's case, as presented to us, clearly does not motivate us to find Economy's design was not the proximate cause of death as a matter of law.

First of all, there is the question of whether either safety device was negligently designed, another question of fact. *See, e.g., New York Central Railroad Co. v. Cavinder, supra*. There was testimony Economy's pins tended to break and to get lost. As for Allison's latches, there is no testimony explaining how the rails collapsed, but that does not signify lack of negligence so long as *res ipsa loquitur* can be used as a rule of evidence. *See, e.g., SCM Corp. v. Letterer*, (1983) Ind.App., 448 N.E.2d 686. Even if both devices are found to have been negligently designed, the trier of fact must still determine whether Allison's modification and the subsequent accident were reasonably foreseeable. *See, e.g., New York Central Railroad Co. v. Cavinder, supra*. Particularly pertinent is the issue of any intervening actions breaking the causal connection between Economy's design and the fatal fall. *See, e.g., State v. Edgman*, (1983) Ind.App., 447 N.E.2d 1091; *New York Central Railroad Co. v. Cavinder, supra*. Although the facts on these points, as presented, may appear undisputed, differing inferences can be gleaned from them. For example, Economy was negligent, and a defective modification was foreseeable; Economy was not negligent; Economy was negligent, but a defective modification was not foreseeable; Economy was negligent, but Allison was not; etc. In addition, there are questions as to whether the collapse of the guardrails even caused the fall. Bridgewater has her work cut out for her in providing sufficient evidence to overcome a judgment on the evidence. *See, e.g., Schroer v. Edward J. Funk & Sons, Inc.*, (1968) 142 Ind.App. 223, 233 N.E.2d 680; *Slinkard v. Babb*, (1953) 125 Ind.App. 76, 112 N.E.2d 876. However, sufficiency of evidence is not the issue here; the total absence of any question of fact is. Economy has not persuaded us that important questions of fact do not

exist so summary judgment was not appropriate.

## Open and Obvious

The trial judge's alternative and independent ground for granting summary judgment to Economy was that the defect in its safety device was, as a matter of law, open and obvious and therefore not defective or unreasonably dangerous. Without our addressing the tenuousness of the proposition that an open and obvious defect, *which has since been modified,* is still unreasonably dangerous and is capable of cutting off recovery for a death caused by the modification thereof, we find the court erred on another base.

Primarily, we dispute the use of the open and obvious principle of *Bemis Co. v. Rubush,* (1981) Ind., 427 N.E.2d 1058, *cert. denied* (1982) 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, in a negligence action. The *Bemis* case was premised upon a strict liability claim actionable under RESTATEMENT (SECOND) OF TORTS, § 402A. Our supreme court held there that a product was not unreasonably dangerous because, as a matter of law, it was openly and obviously defective. But because that action was brought under § 402A, we believe any reference in that opinion to using the same principle in a negligence case to have been dictum. We find this to be particularly so because the supreme court has specifically adopted the opposite stance in a negligence case.

In *J.I. Case Co. v. Sandefur,* (1964) 245 Ind. 213, 197 N.E.2d 519, the Supreme Court specifically adopted the rule that manufacturers have a common law duty to protect third party consumers from hidden or concealed defects and dangers in their products. And in applying that principle to the pertinent facts, the court said,

> "This again is a *question of fact,* namely, was there a concealed defect or hidden danger to a user?"

*Id.* at 223, 197 N.E.2d at 523. If the determination that a defect is concealed or hidden is a question of fact, then the question of whether it is open and obvious is merely the reverse side of the coin. We cannot attribute to the supreme court the paradoxical policy that the wording of the same basic question will determine whether it is one of law or one of fact. And that court's failure to overrule the premise of the *J.I. Case Co. v. Sandefur* opinion in *Bemis* leads us to the inevitable conclusion the court intended to let it stand as the reigning precedent for negligence cases whereas *Bemis* would govern in § 402A cases. *Contra, Law v. Yukon Delta, Inc.,* (1984) Ind.App., 458 N.E.2d 677; *trans. den.* (where Third District relied on dictum in *Bemis* to find plaintiff contributorily negligent as a matter of law by using the open and obvious standard.) As a consequence of our reasoning, we find the trial court erred in granting *summary judgment* where the question of whether the defect was hidden or concealed (ergo, open and obvious) was treated as a question of law. *See Law v. Yukon Delta, Inc., supra* (Staton, J., dissenting) (dissent points out that negligence cases afford the defenses of contributory negligence and incurred risk as well as requiring proof of breach of duty, thus there is no need to extend the open and obvious danger test of *Bemis* ); *compare Bryant-Poff, Inc. v. Hahn,* (1982) Ind.App., 454 N.E.2d 1223, *cert. denied* (1984) —— U.S. ——, 104 S.Ct. 1433, 79 L.Ed.2d 756 (our First District applied the open and obvious rule in a negligence case where defendant moved for *judgment on the evidence* and held, as a matter of law, there was no liability in a specific scenario wherein one could make only one legal inference, based on applicable case law precedents).

Reversed and remanded for further proceedings.

YOUNG, J., concurs.

CONOVER, P.J., concurs in result.