Carolyn L. BRIDGEWATER, Appellant
(Plaintiff below),

v.

ECONOMY ENGINEERING COMPANY,
Appellee (Defendant below).

No. 1285S513.

Supreme Court of Indiana.

Dec. 13, 1985.

Rehearing Denied Jan. 30, 1986.

E. Davis Coots, Coots, Henke & Wheeler, Carmel, for appellant.

Hugh Watson, Randall R. Riggs, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a Petition to Transfer from the Fourth District Court of Appeals brought by Economy Engineering Company [hereinafter "Economy"], Appellee and Defendant below. *See Bridgewater v. Economy Engineering Co.*, (1984) Ind.App., 464 N.E.2d 14, *reh. denied* [Conover, J., concurring in result]. Plaintiff-Appellant Carolyn Bridgewater's negligence action against Economy resulted in a summary judgment in favor of Economy. Bridgewater instituted her suit against Economy because it manufactured the high lift platform from which her husband fell to his death. Bridgewater specifically alleged that Economy employed defective safety devices on the particular model of platform used by her husband necessitating their replacement with equally defective devices by Detroit Diesel Allison [hereinafter "Allison"], her husband's employer. The trial court's granting of summary judgment in favor of Economy was based upon the following alternative grounds as stated by the Court of Appeals in its opinion:

"(1) Economy's manufacturing defect was not, as a matter of law, the proximate cause of Bridgewater's husband's death for lack of foreseeability; [or] (2) the defect, if such there was, was open and obvious, thereby requiring a finding the platform was not defective or unreasonably dangerous (again, as a matter of law)."

The Court of Appeals found both grounds improper for purposes of summary judgment. We disagree and accordingly grant transfer and vacate the opinion of the Court of Appeals. Our reasons for granting transfer are twofold. First, the record before the trial court clearly supported the entry of summary judgment. Second, the open and obvious rule adopted in *Bemis Co., Inc. v. Rubush*, (1981) Ind., 427 N.E.2d 1058 [Hunter and DeBruler, JJ., dissenting], *cert. denied* (1982) 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61, has been interpreted and applied in diverse ways by the several divisions of the Court of Appeals and requires clarification by this Court.

The facts before the trial court were well set out by the Court of Appeals in its opinion as follows:

"FACTS

Bridgewater's husband was employed as a maintenance man at Allison on September 23, 1977, the date of the accident. He and his working partner, Harold Stoughton, were removing duct work from the ceiling of the plant, approximately twenty feet from the floor, and were therefore using a high lift platform purchased by Allison twenty-one years earlier, called a Portable Utility Ladder by its manufacturer, Economy. The deceased was performing the overhead work while Stoughton remained on the floor to move the ladder from location to location. The evidence and testimony presented herein are less than lucid, but apparently the deceased had partially descended the ladder for another move. Stoughton rolled the ladder to a new spot, turned away and took a few steps. He heard the deceased shout, 'It came loose,' and turned to see him fall upon a mobile sheet metal truck and then to the floor. He was not wearing his hard hat and died of head and back injuries. The only apparent cause for the accident was the collapse of the guardrails surrounding the elevated working platform, but that issue is muddied because it is unclear whether the deceased was actually on the working platform or whether he was ascending the ladder when he fell. The principal point of convergence on appeal, however, is upon whom to rest the responsibility for the collapse of the guardrails.

The Portable Utility Ladder, sold to Allison in 1956, combined features of a ladder and a scaffold and provided an approximately six-foot square working platform at its apex for overhead work. The unit could be telescoped to desired heights through the use of a hoist mechanism. The guardrails surrounding the

work platform formed a frame around the worker when they were properly erected. One pair of rails, on opposite sides of the platform, were of self-supporting construction, i.e., two uprights with a crossbar. Attached to one of these was the other pair of rails, these being detachable crossbars hinged upon the one stable side rail and designed to be attached to the opposite stable rail by inserting safety devices in the side rails to prevent the crossbars from slipping off. Once the safety devices were in place, the guardrails formed a cage surrounding the platform. An additional feature on this model was the collapsible nature of the rails where the latter's mobility under low heights was increased. The stable side rails were hinged to fall down and away from the platform once the safety devices were removed from the side rails and the crossbars were detached. The guardrails were discovered in this position after the accident. Bridgewater's supposition is that the devices holding the crossbars to the one side rail were defective and gave way, thereby causing her husband's death, either as he stood on the platform or as he grasped them to hoist himself up. However, the issue becomes clouded here because Allison had replaced Economy's safety feature, which held each crossbar in place, with a device of its own.

Economy's safety device for holding the detachable cross-bars in place was a pair of metal pins attached to their respective bars by chains. Sometime between 1967 and 1972, all the pins on the Portable Utility Ladders at the Allison plants in Indianapolis were replaced. The reason for so doing was because the original pins allegedly had a tendency to break or become lost and one employee had supposedly been injured when a faulty pin had given way. (There is evidence that some Allison employees thought the change unnecessary.) In place of the pins, Allison devised a safety latch to put at the ends of the side rail where the pins had originally been.

Bridgewater alleges these latches on the subject platform were defective and gave way, thereby causing the guardrails to collapse without warning. However, after the accident, the still operable safety latches were tested with the guardrails in place and held properly. Thus, there was no observable explanation for the latches failing if indeed they did."

The Court of Appeals subsequently concluded that the trial court erred by granting Economy summary judgment when the trial court found no proximate cause, a requisite element of negligence. Specifically, the Court of Appeals held:

"However, proximate causation, as a basic premise, is still the crux of the problem, and proximate causation is generally a question of fact and, thus, not amenable to summary judgment. *Department of Commerce v. Glick*, (1978) 175 Ind.App. 449, 372 N.E.2d 479; *New York Central Railroad Co. v. Cavinder*, (1965) 141 Ind.App. 42, 211 N.E.2d 502 [*trans. denied*]. 'Only in cases where the facts are undisputed and lend themselves to a single inference or conclusion will questions of ... proximate cause become questions of law for the trial court.' *Petroski v. NIPSCO* [*Northern Indiana Public Service Co.*], [(1976)] 171 Ind.App. [14,] at 24, 354 N.E.2d [736,] at 744 [*trans. denied*]. Bridgewater's case, as presented to us, clearly does not motivate us to find Economy's design was not the proximate cause of death as a matter of law."

It is not disputed that the portable utility ladder used by Bridgewater's husband was sold by Economy to Allison twenty-one years before this accident. Moreover, it is agreed that no problem ever was reported to Economy concerning the collapsible platform either on this portable utility ladder or on any of the over two hundred other portable utility ladders Economy had sold during that twenty-one year period except for the accident before us. We also note that the change made by Allison was done totally without the consultation or knowl-

edge of Economy approximately seven years before this accident.

Bridgewater's cause of action rests on the basic proposition that Economy was negligent to design its platform with metal pins by which the safety rails were held on the high lift platform in an upright position. Her claim is that in so designing the platform, Economy reasonably should have foreseen that Allison would replace those pins with an equally defective safety device of its own. In other words, Bridgewater contends that Economy should have foreseen that the original design was so defective that it would create a danger to people using the equipment, that the equipment would be redesigned and replaced during its use and that the redesigned parts also would be defective and would cause an accident. This Court has held:

"Under Ind.R.Tr.P. 56(C), a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, *show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* If there is any doubt as to the existence of a factual issue, the motion should be resolved in favor of the non-mover. [citation omitted]. In ascertaining the existence of any doubt, the contents of all pleadings, papers and affidavits are liberally construed in favor of the non-movant. [citation omitted]. Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome. [citation omitted]. Even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. [citation omitted]."

*Woodward Insurance Inc. v. White,* (1982) Ind., 437 N.E.2d 59, 62, *reh. denied* (Hunter, J., dissenting) (emphasis added). The question in this case therefore is whether the determination of proximate cause or foreseeability which Bridgewater suggests and which Bridgewater is required to show

amounts to a "genuine issue as to any material fact" pursuant to Ind.R.Tr.P. 56(C). *See also* Ind.R.Tr.P. 56(E); *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.,* (1984) Ind.App., 458 N.E.2d 291, *trans. denied.* The trial court of course granted Economy's Motion for Summary Judgment after finding:

"[N]o genuine issue of any material fact which would support a finding of liability on the part of defendant Economy...."

It is true that summary judgments are rarely granted in negligence actions when the sole issue is either proximate cause or contributory negligence. When the facts are undisputed and support only one conclusion in a case, however, such a finding may be entered as a matter of law. *Hundt v. LaCrosse Grain Co., Inc.,* (1983) Ind., 446 N.E.2d 327, *reh. denied* 432 N.E.2d 71 [DeBruler, J., dissenting]. It appears that the trial court in the instant case was justified in finding no questions of material or dispositive fact before entering summary judgment in favor of Economy. The platform was designed to be collapsible to meet the demands and needs of the Company's customers since the removal of the platform was necessary to make the units functional for use in various areas of a plant including under low hanging fixtures. There is no showing that this general design was negligent under the circumstances of its anticipated use and no such claim is made other than to suggest that the pins holding the side rails in place sometimes broke or became lost. It is notable that if a pin was not in place because it was broken or lost, the sides would not stay up. More importantly, however, there was conflict in this case among personnel at Allison over whether there was any real problem with the pins in the first place and, secondly, this accident clearly did not occur because a pin was lost or broken. There was a complete redesign of the platform by Allison some years before this accident without the knowledge, consent or consultation of Economy and there is no evidence that any problem resulted after this change. In

fact, tests made after this accident showed that the safety devices were working well. The contention that a material fact question was presented therefore is strained and speculative at best. This is to say that there was no material fact issue presented by the question of whether Economy should reasonably have foreseen that its metal pins would not be safe and would need to be replaced and, further, that the replacements also would be unsafe and would cause an accident. Considering the facts presented in this case, we do not find that the trial court erred by entering summary judgment as it did.

█ The trial court entered summary judgment for yet another reason which it stated as follows:

"That this Court finds as a separate and independent basis for its decision that the defect allegedly existing as a part of the PUL's [a/k/a portable utility ladder] original rail-latching device, if defective, was not hidden or latent in any sense, but was *open and obvious* to any user or consumer of the PUL." (emphasis added).

This holding was based on our opinion in *Bemis, supra,* which has received varied and conflicting treatment by the different districts of the Court of Appeals. We therefore take this opportunity to resolve those conflicts and to further clarify our position on the "open and obvious danger" principle. Our opinion in *Bemis* has been interpreted to mean that the question of whether an alleged danger is open and obvious is a decision that is always left to the trial court as a matter of law. Moreover, *Bemis* has been read to apply to all negligence cases whether or not they involve any theories of products liability. In *Bemis,* we *did not* hold that the question of whether an alleged danger is open and obvious is a matter of law in *all* cases. *Bemis* involved a set of facts that was not in conflict and that left no general issue as to any material fact except for the question of whether the danger was open and obvious. In *Hoffman v. E.W. Bliss Co.,* (1983) Ind., 448 N.E.2d 277 (Hunter and DeBruler,

JJ., concurring in result), the question of liability was presented in a different factual posture. The trial court and the Court of Appeals found in that case that the danger of placing one's hand in a press constituted an open and obvious danger as a matter of law. Upon review, this Court determined that although the operator of the press would know that there would be danger in placing one's hand in the press, it was not open and obvious, as a matter of law, that an internal dysfunction of the press might cause it to activate and recycle itself when it did not do so during normal operation. This Court therefore found that the question of whether the result of an internal dysfunction was a hidden defect or an open and obvious danger to the operator was properly submitted to the trier of fact. *See also Law v. Yukon Delta, Inc.,* (1984) Ind.App., 458 N.E.2d 677, *trans. denied* (Staton, J., dissenting) (no conflict in the facts but that the injured party knew and appreciated the open and obvious circumstances that resulted in his injury).

█ We agree with the Court of Appeals when it states in its opinion on the instant case that the question of whether a danger is open and obvious is the same as the question of whether a danger is concealed or hidden to the user in a given set of facts. *See Hoffman, supra; J.I. Case Co. v. Sandefur,* (1964) 245 Ind. 213, 197 N.E.2d 519 (Jackson, J., concurring in result). In *Sandefur,* a platform on the top of a heavy piece of farm machinery covered from view certain dangerous gears immediately under the platform. The platform also gave the appearance of being safe to stand on while using the equipment and even appeared to exist for that very purpose. Unfortunately, this was not the case and the plaintiff fell through the platform into the gears, injuring himself. This Court held:

"This again is a question of fact, namely, was there a concealed defect or hidden danger to a user?"

*Sandefur,* 245 Ind. at 223, 197 N.E.2d at 523.

█ In the instant case, the Court of Appeals generally discussed the application

of *Bemis* to negligence cases while noting the diversity of opinion amongst the different districts of the Court of Appeals in this regard. In *Bemis*, we clearly held:

"The open and obvious rule finds support in Indiana cases and cases decided in federal courts applying Indiana law in diversity. The rule may be stated generally as follows: *In the area of products liability*, based upon negligence or based upon strict liability under § 402A of the Restatement (Second) of Torts, *to impress liability upon manufacturers*, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all."

*Bemis*, 427 N.E.2d at 1061 (emphasis added). This holding has been interpreted to mean that the open and obvious rule is not to be limited to products liability cases but is to be applied in all negligence cases, even those involving general negligence. This particular question was most directly presented in *Law, supra*, wherein the open and obvious principle was applied. In *Law*, the plaintiff knowingly walked onto a wet and slippery floor which caused him to fall and be injured. Judge Staton dissented from the majority opinion in *Law* arguing, *inter alia*, that the open and obvious danger test was derived from a line of products liability cases and should not be applied to the slip and fall situation. We agree and adopt the following language taken from Judge Staton's dissenting opinion:

"The majority also unnecessarily dared to extend the products liability open and obvious danger test to the slip and fall situation. Negligence law in Indiana adequately covers this situation without borrowing doctrines from the law developed for products liability. To be liable for negligence in Indiana, the defendant must have failed to exercise his duty of care owed to the plaintiff, resulting in the plaintiff's injury. *Norman v. Turkey Run Community School Corp.* (1980), Ind., [274 Ind. 310] 411 N.E.2d 614, 616. As a business invitor, Yukon owed a duty to Law, an invitee, to exercise reasonable care to maintain the plant in a reasonably safe condition unless and until Law had reasonable notice that the premises were not safe. *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 407, 379 N.E.2d 1004, 1007; *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 162, 341 N.E.2d 785, 787.

If Law had reasonable notice that Yukon was not exercising due care in maintaining dry floors he might be guilty of contributory negligence or incurred risk. As the majority notes, knowledge and appreciation of peril are essential elements of these defenses. In fact, contributory negligence occurs when the plaintiff unreasonably fails to recognize an obvious risk or danger. *Kroger, supra* 379 N.E.2d at 1009. Incurred risk occurs when the plaintiff voluntarily accepts a known risk or danger. *Id.* at 1012. With these defenses and the invitee duty rule, there is no need to extend the open and obvious danger test which is and should remain limited to products liability cases."

*Law*, 458 N.E.2d at 681 [Dissenting Opinion].

In conclusion, we find that the trial court was justified in finding, under any of the theories discussed above, that there was no genuine issue as to any material fact and that there was no dispute or conflict regarding a fact which was dispositive of the action. We therefore grant transfer, vacate the opinion of the Court of Appeals and affirm the trial court.

GIVAN, C.J., and PRENTICE, J., concur.

DeBRULER, J., dissents with separate opinion.

SHEPARD, J., concurs and dissents with separate opinion.

DeBRULER, Justice—dissenting.

In human experience, it is often the case that defects in products are not discovered until the consumer user attempts to make use of them. At that point, the user has invested time and money in a project, and the achievement of the project goal is dependent upon the successful employment of the product. At that point, it is ofter cheaper and more humanly satisfying to attempt an immediate modification of the product to make it work. That such modifications will be attempted is entirely predictable and foreseeable, as is the probability that such modifications will be unsuccessful or only partially successful. This is one of the several paths along which one is led in this case by the inferences arising from the experiential data and opinions provided by the witnesses. That path could reasonably be mapped out in the following manner. Economy negligently designed and produced the latches on its rails, and they proved inadequate in use. Thereupon Allison's made an unsuccessful modification of the latches, and the rails and modified latches were employed by Bridgewater's husband. The latches failed and the death resulted.

The rule established by *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847 is that the question of proximate cause is ordinarily one for the trier of fact and is not ordinarily one for the court to resolve as a matter of law. This rule is based upon the recognition that a causation question is, more than anything else, a fact bound question. Its answer is to be found by sorting out and synthesizing competing inferences from raw experiential data and opinions provided by witnesses. The rule concedes that there are those cases which can rightly be resolved by the court in a summary proceeding, rather than by trial. However, in my view, this is not one of those rare cases. Here, the latch device was small in size and cost in relation to the mobile ladder as a whole. Repetitive use of and reliance upon the devices would be made when employing the devices in carrying out a project. Failure of the devices would have serious consequences to the workman. The character of these defective devices was such that a reasonable trier of fact could conclude that the attempt by Allison's to improve them and the subsequent injurious consequences befalling Mr. Bridgewater were reasonably foreseeable at the time of design and construction by Economy, and were the natural and probable consequence of that design and construction. Such a trier of fact could reasonably conclude that the chain of causation from original design and construction was not broken by Allison's attempt at modification. I find myself in accord with the decision of the Court of Appeals to reverse the summary disposition of this case and to remand it for further proceedings.

SHEPARD, Justice—concurring in part and dissenting in part.

To the extent that today's opinion suggests that the open and obvious rule is not an appropriate basis for summary judgment in a "general negligence" case, I believe the Court has eliminated an unnecessarily confusing element in Indiana law. By disapproving the majority's opinion in *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, and adopting the views of Judge Staton's dissent, the Court reaffirms the adequacy of traditional defenses such as contributory negligence and incurred risk.

In light of this effort to clarify the applicability of the open and obvious rule, I am surprised that the majority proceeds to reverse the Court of Appeals' decision in this case and find that the trial court properly used open and obvious to render summary judgment on the negligence theory of the complaint. I gather that the distinction being made is between negligence actions involving products and negligence actions not involving products. The basis for this distinction is not really explored in today's decision, and the suggestion in *Bemis Co., Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058, that the open and obvious rule is available in negligence actions involving products was dictum, as Judge Miller has

pointed out in the Court of Appeals' opinion, since *Bemis* was a strict liability case based on Section 402A of the Restatement (Second) of Torts.

I would affirm the decision of the Court of Appeals.