**Vernon D. EICHORST,
Plaintiff-Appellant,**

v.

**STANDARD LIFE INS. CO. OF AMERICA, Defendant-Appellee.**

. **No. 3–875 A 170.**

Court of Appeals of Indiana,
Third District.

Jan. 22, 1979.

Rehearing Denied March 16, 1979.

Robert F. Gonderman, South Bend, for plaintiff-appellant.

Franklin A. Morse, II, Richard W. Morgan, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, for defendant-appellee.

GARRARD, Presiding Judge.

On March 25, 1972, Robert Eichorst died from injuries sustained in a collision. His father, Vernon Eichorst, brought this suit to recover the proceeds of a life insurance policy. The policy, which named Vernon Eichorst as beneficiary, was issued by Standard Life Insurance Company to Robert on March 17, 1971. Standard defended on the basis that the policy was not in force due to non-payment of the necessary premiums. In response Eichorst claimed waiver or estoppel. After trial a jury found for the defendant.

This appeal asserts the verdict was contrary to law. Eichorst also asserts reversible error in the exclusion of testimony concerning a statement made by Robert about a week before his death and in the refusal of a tendered instruction concerning waiver or estoppel. We affirm.

## I. The Policy

Eichorst contends that even when the evidence is reviewed from the standpoint most favorable to Standard and Standard is accorded all reasonable favorable inferences from the evidence, the only reasonable conclusion is that the life insurance policy had been duly reinstated and was in force on the date of Robert's death.

The evidence, viewed favorably to the verdict, disclosed that when Robert purchased the policy he elected to pay the yearly premium of $262.80 on a semi-annual basis. He made the first payment. The second was due September 17, 1971, but this payment was not made. According to the terms of the policy it then lapsed after the expiration of a thirty-one day grace period.

On December 8, 1971, Robert sent an application for reinstatement and a check for forty dollars ($40) to the company. About the same time the agent who had

sold the policy to Eichorst wrote the company to determine whether the policy had lapsed.[1] In response, on December 16, 1971, the policyholder service department wrote the agent acknowledging his letter and the receipt of Eichorst's check and application. The letter noted that the forty dollar tender was insufficient; suggested that Eichorst might wish to change his premium payment election to a monthly basis; and computed the necessary additional premium to reinstate the policy until January 17th if Eichorst's election were changed.

On December 30th the agent wrote the company that Eichorst was planning to send eighty dollars ($80) the next weekend "and then will request information as to any other amount that may be needed to bring the contract up to full status." However, Eichorst made no payments in the ensuing weeks, nor did he ever indicate a desire to change his original election to pay the premiums on a semi-annual basis.

On January 17, 1972 the company again wrote to the agent advising that they had heard nothing from Eichorst. This letter reported that the company was simply holding Eichorst's forty dollar check and that an additional $91.40 was necessary to meet the overdue semi-annual premium. The agent responded on January 25th reporting another contact with Eichorst and a "promise" to pay the $91.40.

On February 2 Eichorst sent a check for eighty dollars ($80) to the company. On February 8 the company responded directly advising Eichorst that another $11.40 was necessary to pay the semi-annual premium and secure reinstatement of the policy. This letter also stated that commencing on the March 17 anniversary date, the company was willing to change billing to a monthly basis. No payment was made in response to this letter, so on March 20th the company again wrote Eichorst. This letter reported

that the company was still holding Eichorst's checks and required the balance of $11.40, and an additional $21.90 if Eichorst wanted to switch to monthly payments and pay the amount due March 17th. On March 25th Eichorst died without having taken any further action regarding the policy.

The reinstatement clause contained in the policy stated:[2]

> "*Reinstatement.* At any time within ten (10) years after nonpayment of any premium, the policy, unless it had been surrendered for cash, will be reinstated on written application for a reinstatement if evidence of insurability satisfactory to the company is furnished, premiums to date of reinstatement are paid and any other indebtedness to the company is paid or reinstated, all with interest at the rate of 6% per annum payable annually."

Eichorst concedes, as he must, that while some of the evidence was subject to more than one inference, the evidence recited was sufficient for the jury to conclude there was no waiver or estoppel.

Instead he urges that under the evidence the policy was reinstated as a matter of law and was in force at the time of Robert's death.

■ In considering this contention we first note that Eichorst's position at trial was that the reinstatement provision should be interpreted by the jury.[3] To the extent his argument now asserts this was error, it is a claim he may not advance to secure a reversal. *Johnson v. First Nat'l. Bank* (1917), 65 Ind.App. 629, 117 N.E. 676.

■ Accordingly, his argument on appeal is limited to whether the interpretation of the policy by the jury was contrary to the one that any reasonable jury would reach. We conclude it was not. The term "premiums to date of reinstatement" could mean

---

1. This letter was apparently prompted by a charge back on a statement sent to the agent by Standard.

2. There is no contention that Eichorst's application was insufficient on grounds other than the necessary payments.

3. Where there is no ambiguity, interpretation of an insurance contract is a question of law for the court.

the amount of money necessary to cover the period of time between the date upon which the last premium was due and the date reinstatement was sought. However, to accept this construction would mean that the policy would be in full force on the reinstatement date and then would, again, be immediately in default.[4]

The phrase might also mean that all overdue premium payments which had become due prior to the reinstatement date had to be paid to reinstate the policy. This interpretation would result in full reinstatement until the next regular date for premium payment. Especially in the context of reinstating a lapsed contract, this latter interpretation is reasonable. The decision is not contrary to law.

## II. Hearsay

At trial Eichorst sought to introduce evidence of a conversation Robert had about a week before his death with his parents and fiancée. The company objected and the evidence was excluded. According to the offer to prove, Robert had related that he had almost had an auto accident which could have killed him. In response his mother asked if his life insurance was still in effect and he said it was.

Eichorst urges the conversation should have been admitted as an exception to the hearsay rule to establish Robert's state of mind. It is urged the error in excluding it was harmful since it prejudiced Eichorst's claim of estoppel.

It is true that declarations may be admissible as circumstantial evidence of the declarant's state of mind. McCormick, *Evidence* (2d Ed.) § 249, pp. 590–591. However, assuming the conversation was admissible, we cannot find prejudicial error. The elements of estoppel have been frequently set forth:

"(1) A representation or concealment of material facts; (2) The representation must have been made with knowledge of the facts; (3) The party to whom it was made must have been ignorant of the matter; (4) It must have been made with the intention that the other party should act upon it; (5) The other party must have been induced to act upon it." *State ex rel. Crooke v. Lugar* (1976), Ind.App., 354 N.E.2d 755, 765.

Thus, the critical element was not whether Eichorst believed the policy was in force, but whether he *acted* upon such a belief. The error in excluding the evidence was harmless. Whatever evidence there was of action by Robert in response to the company's actions was before the jury.

## III. Instruction

It is finally asserted that the court erred in refusing a tendered instruction which would have advised the jury that an extension of credit by the insurer to the insured for the payment of premiums might, under certain circumstances, constitute a waiver or estoppel. While there concededly was no direct evidence of any extension of credit by the insurer, Eichorst argues that this might be found through the language contained in some of the correspondence and the fact that the company held the checks sent by Robert.

We have reviewed the transcript. The court gave six separate instructions dealing specifically with waiver and estoppel, including one that specifically referred to the holding of the payments sent in by Robert. The instructions given adequately covered the matter in plaintiff's tendered instruction No. 6. It was therefore not reversible error to refuse the instruction. *Dept. of Commerce v. Glick* (1978), Ind. App., 372 N.E.2d 479.

Affirmed.

HOFFMAN and STATON, JJ., concur.

---

4. Subject, however, to the grace period during which one might again catch up.