David **GIBSON** and Nancy Gibson, Appellants–Plaintiffs,

v.

**EVANSVILLE VANDERBURGH BUILDING COMMISSION** and The Evansville Vanderburgh Area Plan Commission, Appellees–Defendants.

No. 87A01–9902–CV–40.

Court of Appeals of Indiana.

March 29, 2000.

Leslie C. Shively, Fine & Hatfield, P.C., Evansville, Indiana, Attorney for Appellant.

D. Timothy Born, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, LLP Evansville, Indiana, Attorneys for The Evansville Vanderburgh Area Plan Commission.

Joseph H. Harrison, Jr., Cedric Hustace, Bowers, Harrison, Kent & Miller, Evansville, Indiana, Attorneys for Evansville Vanderburgh Building Commission.

## OPINION

STATON, Sr. Judge

■ David and Nancy Gibson ("the Gibsons") appeal from the entry of summary judgment in favor of the Evansville Vanderburgh Building Commission ("Building Commission") and the Evansville Vanderburgh Area Plan Commission ("APC"). The Gibsons raise two issues for our review, which we restate as:

I. Whether the Building Commission's and the APC's motions for summary judgment were repetitive, and thus, should have been summarily denied.

II. Whether the trial court erred by granting summary judgment in favor of the Building Commission and the APC pursuant to the Indiana Tort Claims Act.[1]

We affirm.

In 1991, the Gibsons sought to construct a home on property they had purchased in Evansville. Before building the home, the Gibsons were required to obtain an improvement location permit from the APC. Once an application for a permit has been submitted to the APC, the Building Commission checks flood rate insurance maps to determine whether the property where the home is to be built is located within a flood plain. The permit issued by the APC indicated that the Gibsons' property was not located in a flood zone. On November 11, 1991, the Building Commission notified the Gibsons' building contractor of the Building Commission's determination, based on its examination of the flood insurance rate maps, that the Gibsons' property was not located in a flood zone. Based on the information from the APC and the Building Commission, the Gibsons built their home. In 1996, the Gibsons' home was damaged by flooding on two different occasions. After the Gibsons notified the Building Commission of their flooding problems, the flood insurance rate maps were reviewed again, and the Building Commission notified the Gibsons that their property was located in the 100–year flood zone.

The Gibsons brought suit against the Building Commission and the APC, alleging that both had been negligent in determining whether the Gibsons' property was located in a flood zone. The Building Commission filed a motion to dismiss, which was denied by the trial court. Both the Building Commission and the APC filed motions for summary judgment, contending that they were immune from civil liability pursuant to IND.CODE § 34–13–3–3(13) (1998) because their actions were merely unintentional misrepresentations. The trial court granted summary judgment in favor of both the Building Commission and the APC. The Gibsons appeal.

I.

*Repetitive Motions*

The Gibsons contend that the defendants' summary judgment motions were repetitive and should have been summarily

---

1. The Indiana Tort Claims Act is currently codified at IND.CODE §§ 34–13–3–1 to –25 (1998).

denied under Ind. Trial Rule 53.4. Specifically, the Gibsons argue that because the defendants' motions for summary judgment were based on the same theory as the Building Commission's motion to dismiss, and because the trial court denied the Building Commission's motion to dismiss, the summary judgment motions were repetitive and should have been deemed denied five days after they were filed. T.R. 53.4(B). We disagree.

First, we are not convinced that the summary judgment motions in this case were repetitive. The Building Commission did file an Ind. Trial Rule 12(B)(6) motion to dismiss, based on its claim of immunity for unintentional misrepresentation under IC 34–13–3–3(13), which was denied by the trial court. However, the grant of a motion to dismiss under T.R. 12(B)(6) is appropriate only where it appears to a certainty from the facts stated on the face of the complaint that the plaintiff is not entitled to relief. *Bentz Metal Prod. Co. v. Stephans*, 657 N.E.2d 1245, 1247 (Ind.Ct.App.1995). In contrast, a motion for summary judgment requires the parties to designate evidence in support of their positions as to whether or not the action should proceed. Ind. Trial Rule 56(C). Thus, the motions, although based on the same theories, required the trial court to examine different evidence in order to make the determination as to whether the defendants were entitled to judgment as a matter of law.

Further, T.R. 53.4 was designed to prevent delay through the repetitive filing of motions. *Biggs v. Marsh*, 446 N.E.2d 977, 981 (Ind.Ct.App.1983) (citing W. Harvey, Indiana Practice, vol. 3 (1982 Supp. p. 91)). However, the trial court has inherent power to reconsider any of its previous rulings so long as the action remains *in fieri*, or until judgment is entered *Id*. There is no dispute that this action was *in fieri* at the time the motions for summary judgment were filed. Thus, the trial judge had discretion to rule on the defendants' summary judgement motions,

even if they were repetitive and the five day period referred to in T.R. 53.4(B) had expired. The trial court did not err by considering and ruling on the defendants' motions for summary judgment. Now we turn to the question of whether the trial court erred by ruling in favor of the defendants.

## II.

### Summary Judgment

The Gibsons contend that the trial court erred by granting summary judgment in favor of the APC and the Building Commission. Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Ramon v. Glenroy Construction Co., Inc.*, 609 N.E.2d 1123, 1127 (Ind.Ct.App.1993), *trans. denied.* The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Ramon*, 609 N.E.2d at 1127.

The Indiana Tort Claims Act ("the Act") allows suit against government entities for torts committed by their agencies or employees, but grants immunity under the specific circumstances enumerated in IC 34–13–3–3. Whether a governmental entity is immune from liability under the Act is a question of law for the courts. *Joseph v. LaPorte County*, 651 N.E.2d 1180, 1183 (Ind.Ct.App.1995). The essential inquiry is whether the legislature

intended acts such as those challenged to enjoy immunity. *Id.* Because the Act is in derogation of common law, it is narrowly construed against the grant of immunity. *Jacobs v. Board of Com'rs of Morgan County,* 652 N.E.2d 94, 98 (Ind.Ct.App. 1995). The party seeking immunity bears the burden of proving that its conduct falls within the Act and is, thus, shielded from liability. *Id.*

 The provision of the Act at issue in this case is IC 34–13–3–3(13), which provides: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... misrepresentation if unintentional[.]" It is clear from the plain language of the provision that the legislature intended to provide immunity for any misrepresentation that is not intentionally made.[2] However, the Gibsons contend that the Building Commission and the APC are not immune from liability under the unintentional misrepresentation provision of the Act. Specifically, the Gibsons argue that the actions of the Building Commission and the APC that were negligent, and thus, give rise to liability, were not the misrepresentations but the underlying examinations of the flood maps. Therefore, the Gibsons argue, the Building Commission and the APC are liable for their negligence in examining the flood maps, and should not be shielded under the immunity provision for unintentional misrepresentations. We disagree.

Although we are not bound by the decisions of courts that have interpreted a similar provision of immunity under the Federal Tort Claims Act,[3] ("FTCA") we find those cases instructive. In particular, the decision of the United States Supreme Court in *U.S. v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) is helpful to our resolution of this issue. In *Neustadt,* the Supreme Court addressed the question of whether the government was entitled to immunity under 28 U.S.C. § 2680(h), which precludes recovery against the federal government on claims "arising out of ... misrepresentation." The facts of that case are as follows. The plaintiff bought a home in reliance on a certificate of value prepared by the Federal Housing Administration (FHA).[4] It was later discovered that the FHA's inspection of the home was negligently conducted, and that the value of the home was less than the amount indicated by the FHA appraisal. The plaintiff brought suit against the government, claiming that the government's negligent inspection and appraisal caused the harm. The government countered that the plaintiff's claim fell within the misrepresentation exception of 28 U.S.C. § 2680. *Neustadt,* 366 U.S. at 698–701, 81 S.Ct. 1294.

The Supreme Court held that the misrepresentation exception to the FTCA was intended to immunize government entities and employees from negligent misrepresentations. *Id.* at 702, 81 S.Ct. 1294. Addressing the plaintiff's claim that the injury was caused by the negligent inspection

---

**2.** This statement is supported by the opinions of this court that have addressed the provision of immunity for unintentional misrepresentations under IC 34–13–3–3(13). *See Ind. Dept. of Correction v. Stagg,* 556 N.E.2d 1338, 1343 (Ind.Ct.App.1990) (holding that government was immune from liability under the discretionary function subsection of the Act, but also noting that misrepresentation in that case was not intentional); *Parke County v. Ropak, Inc.,* 526 N.E.2d 732, 738 (Ind.Ct.App. 1988) (holding that immunity for unintentional misrepresentation does not apply if misrepresentations were intentional.).

**3.** 28 U.S.C. § 1346(b) (1982). The exceptions to liability under the FTCA are found at 28 U.S.C. § 2680 (1982).

**4.** The FHA conducted the inspection and assigned the appraised value to the home under the auspices of 24 C.F.R. §§ 200.145, 200.146, 200.148 (1959 ed.). Further, to comply with § 226 of the National Housing Act, the sellers had to deliver to the buyers, prior to the sale of the property, a written statement setting forth the FHA appraised value. This written statement of appraisal is what the plaintiff relied on in purchasing the home.

and appraisal and not by the misrepresentation, the court explained that whether the plaintiff's claim was outside the intended scope of the FTCA depended solely upon what Congress meant by the language in § 2680(h). The court held that:

[t]o say ... that a claim arises out of "negligence," rather than "misrepresentation," when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, *i.e.*, the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation" [5] ... which there is every reason to believe Congress had in mind when it placed the word "misrepresentation" ... in § 2680(h).

*Id.* at 706–07, 81 S.Ct. 1294. Further, the court stated that when a statute or ordinance places on a governmental agency the duty either to disclose directly, or to require private persons to disclose, information for the assistance and guidance of other persons, ... it may be said that the Government owes a "specific duty" to obtain and communicate information carefully, lest the intended recipient be misled to his financial harm. While we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.

*Id.* at 710–11, 81 S.Ct. 1294.

Just as the FTCA precludes liability for misrepresentations, the Indiana Tort Claims Act provides immunity to state government actors for "misrepresentations if unintentional." IC 34–13–3–3(13). We previously stated that, by including this provision in the Act, the legislature intended to immunize governmental entities from all misrepresentations that were not intentionally made. Thus, as did the United States Supreme Court in *Neustadt*, we conclude that our legislature intended to immunize actions falling under the commonly understood definition of negligent misrepresentation. *See* n. 6, *supra.* Thus, we adopt the rationale of the Supreme Court in *Neustadt*, and hold that IC 34–13–3–3(13) precludes recovery for claims against the state arising out of negligent misrepresentation, which includes the negligent conduct of the government in *obtaining* and communicating the information.

In the present case, the Gibsons contend that the APC and the Building Commission negligently examined the flood insurance rate maps, and that those negligent examinations caused the Gibsons' injury. The APC and the Building Commission argue that it was their misrepresentations and the Gibsons' reliance on them that caused the Gibsons' injury. Based on the reasoning of *Neustadt*, we agree with the APC and the Building Commission. The Gibsons' harm was caused by their reliance on the misinformation communicated by the APC and the Building Commission. As stated in *Neustadt*, 366 U.S. at 710–11, 81 S.Ct. 1294, "while we do not condone carelessness by government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words [the legislature] has used in

---

**5.** The Supreme Court set forth several definitions of negligent misrepresentation. One was from the RESTATEMENT OF TORTS (1938) § 552: "One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting[.]" Another was from Prosser, Torts (1941 ed.) § 87: "Responsibility for misrepresentation ... may rest upon: [n]egligence in obtaining information or in making the representation[.]" *Id.* at 707, 81 S.Ct. 1294.

limiting the scope of the Government's liability." As a matter of law, the actions of the APC and the Building Commission are shielded by the immunity provided for unintentional misrepresentations under IC 34–13–3–3(13). For this reason, we affirm the grant of summary judgment in favor of both defendants.

Affirmed.

BAKER, J., and NAJAM, J., concur.