Karl LINDEN and Mary Linden, Individually and on Behalf of all Other Class Members, Appellants–Plaintiffs,

v.

HEALTH CARE 2000, INC., et al., Appellees–Defendants.

Karl Linden and Mary Linden, Individually and on Behalf of all Others Similarly Situated, Appellants–Plaintiffs/Cross–Appellees,

v.

Indiana Department of Insurance, et al., Appellees–Defendants/Cross–Appellants.

No. 45A05–0306–CV–275.

Court of Appeals of Indiana.

June 11, 2004.

---

David W. Holub, Ruman, Clements & Holub, P.C., Hammond, IN, Attorney for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorney for Appellees Indiana Department of Insurance, Sally McCarty (Individually and as Commissioner), Marjorie McGinn, Donna D. Bennett, and John Mortel.

## OPINION

BROOK, Senior Judge.

### Case Summary

Appellants-plaintiffs/cross-appellees Karl Linden and Mary Linden, individually and on behalf of all others similarly situated (collectively, "Appellants"), and appellees-defendants/cross-appellants Indiana Department of Insurance ("the DOI"), et al. (collectively, "Appellees"),[1] appeal the denial of their respective motions for summary judgment. We affirm in part and reverse and remand in part.

### Issues

We restate the issues presented by the parties as follows:

I. Whether the trial court erred in denying Appellees' motion for partial summary judgment; and

II. Whether the trial court erred in denying Appellants' motion for summary judgment.

### Facts and Procedural History

In February 1993, Dan Kasprzak sent a letter to the DOI in which he described his development and copyright of a "total health care program" involving "a management company, a prepaid health care product, and an investment company" and requested information "so the companies and concept can be registered and licensed properly." Appellees' App. at 11. In a December 1993 letter to Kasprzak, DOI Chief Deputy Commissioner David Reddick responded that "several staff members ... had some questions about how these entities are going to work" and requested a meeting with Kasprzak "during the first two weeks in January [1994] to discuss [his] plans ... in person." *Id.* at 13. During a meeting on January 13, 1994, Kasprzak informed Reddick that "he had enrolled individuals in this [health maintenance organization ("HMO") ] program[.]" Appellants' App. at 92.[2] Reddick told Kasprzak "that he should not do that, going forward," and Kasprzak agreed. *Id.*

On April 11, 1994, Kasprzak met with Reddick to discuss his "pending" application to operate an HMO. *Id.* at 109. During the meeting, Reddick expressed the DOI's "serious concerns about [Kasprzak's] ability to meet the necessary requirements to become a licensed HMO in Indiana." *Id.* In a letter to Kasprzak dated April 12, 1994, Reddick reiterated these

---

1. Appellees include the DOI, Sally McCarty (individually and as DOI Commissioner), and former DOI Commissioners Marjorie Maginn, Donna Bennett, and John Mortel.

2. The record indicates that Kasprzak was affiliated with several entities, including Physician's Resource Management, Inc., Allied Health Investments, Inc., and Health Maintenance Systems, Inc. For simplicity's sake, we refer to these entities collectively and to the HMO specifically as Health Care 2000.

concerns and reminded Kasprzak that "if these questions are not answered to [the DOI's] satisfaction by May 15, 1994, [the DOI] will have no choice but to contact the Attorney General's office and request that they issue a cease and desist order and/or bring legal action against Healthcare 2000 and its affiliates as unauthorized entities selling insurance in the state of Indiana." *Id.* at 110. In a memorandum to Reddick dated April 25, 1994, DOI Acting Commissioner Donna Bennett stated, "Please advise me as to the status of Health Care 2000. I recall that several months ago we discussed your concerns that they were operating as an HMO without being licensed. If this is the case, this is a very serious matter, and we should demand that they cease and desist *immediately.* The Department has no authority to allow an insurer to operate illegally without a license." *Id.* at 111.

In a letter to Kasprzak's counsel dated October 19, 1994, DOI Chief Deputy Commissioner Marjorie Maginn expressed the DOI's understanding that his application for a certificate of authority to operate an HMO was "complete as submitted." Appellees' App. at 18. Maginn itemized twenty-seven "deficiencies" in the application, "any one of which would preclude issuance of a certificate of authority." *Id.* at 22. Maginn further stated,

Nevertheless, the marketing plan included in the application acknowledges that the products [of the HMO] have been and continue to be marketed within the State of Indiana. Such actions are in clear violation of Indiana law. Accordingly our review does not impact upon the earlier request for a cease and desist order from the Attorney General. Said request will remain in force until such time as [the HMO] obtains a certificate of authority from the State of Indiana.

*Id.* No cease and desist order was ever issued.

In a letter to Kasprzak's counsel dated June 13, 1996, DOI Chief Counsel Briget Polichene acknowledged the DOI's receipt of an "application for a certificate of authority to establish and operate" an HMO and stated that the application did not meet statutory standards. *Id.* at 24.[3] Polichene detailed several "concerns raised by the application" and reiterated that "a company may not act as a health maintenance organization ... in the absence of a certificate of authority issued by [the DOI]." *Id.* at 24, 25. Polichene also noted that the DOI had "received numberous [sic] complaints from enrollees regarding timeliness of claim payments and the services provided by the" HMO. *Id.* at 25. Finally, Polichene stated that the DOI would "preliminarily deny the application" if Kasprzak did not comply with the terms of the letter by June 28, 1996. *Id.*

In a letter dated June 20, 1996, Polichene responded to questions raised by Kasprzak's counsel and stated,

The Department advises you again that a company may not act as a health maintenance organization ... in the absence of a certificate of authority issued by the Department. As you know, the Department has not issued a certificate of authority to the Applicant because the Applicant has not yet demonstrated compliance with the statutory requirements for issuance of a certificate of authority. We are increasingly concerned about the Applicant's disregard for Indiana law (as evidenced by its continued operation without a certificate of authority) and representations that [it] is able to act as a health maintenance organization.

---

**3.** This letter refers to the only application involved, i.e., the one "pending" in 1994.

*Id.* at 29. On May 12, 1997, DOI Acting Commissioner Sally McCarty denied Health Care 2000's application for a certificate of authority to operate an HMO. On December 19, 1997, the Marion Circuit Court ordered the liquidation of Health Care 2000.

On April 8, 1999, Appellants filed their third amended class action complaint against, *inter alia,* Health Care 2000, Kasprzak, the DOI, and McCarty in her official and individual capacities, as well as Maginn, Bennett, and John Mortel. In Counts VII, VIII, and IX of their complaint, Appellants alleged that the DOI (including McCarty and DOI employees in their official capacity) "was negligent in that it failed to take reasonable and prudent actions to protect the Healthcare 2000 enrollees from harm, including (but not limited to) issuing a cease and desist order, notifying the insureds of the *Corporate Defendants* ['] lack of authority to sell insurance products, etc."; that the DOI "negligently, recklessly, willfully, wantonly, or intentionally provided [members of the public] with false and/or misleading information, indicating that Healthcare 2000 was a viable insurer and authorized to provide HMO coverage"; and that the DOI "failed to exercise reasonable care in performing its investigating duties and/or failed to exercise reasonable care to regulate [Health Care 2000] and/or make reasonable efforts to resolve any problems disclosed as a result of their investigation of said complaints." Appellants' App. at 61–65.

In Count X of their complaint, Appellants sought damages "pursuant to 42 USC § 1983 and related statutes" against the DOI Commissioners individually, alleging that they had "not only failed to stop [Health Care 2000's] illegal operation, they affirmatively and knowingly, albeit inaccurately, informed those seeking guidance as to the HMO's status that it was operating in accordance with the laws and had fulfilled all of the legal requirements, where their records disclosed that the facts were not consistent with that statement." *Id.* at 66–67. Appellants further alleged that the Commissioners' actions, "being so inconsistent with Indiana law and so inconsistent with any professed desire to protect the general public, suggest that the respective *Commissioners* may have been motivated by undisclosed influences, perhaps originating from those involved in the HMO operation, either directly or indirectly, especially when that failure to act occurred under four different administrations[,]" and that the non-governmental defendants were "able to deprive the class members of their property under color of state law, by taking their property (insurance premiums) without due process of law." *Id.* at 67.

On December 11, 2002, Appellants filed a motion for partial summary judgment against only the DOI on the issue of liability. On February 10, 2003, the Attorney General filed a memorandum in opposition to Appellants' motion and in support of summary judgment for all State defendants. The Attorney General asserted that all State defendants were "immune from liability by virtue of the Indiana Tort Claims Act . . . and are entitled to summary judgment." Appellees' App. at 1. On February 18, 2003, Appellants filed a reply memorandum and a motion to strike those portions of the Attorney General's memorandum "that deal with the liability of parties not addressed in [Appellants' motion for partial summary judgment]." Appellants' App. at 287. On March 19, 2003, the trial court held a hearing on the parties' motions for summary judgment. On April 7, 2003, the trial court entered an order summarily denying Appellants' motion to strike and denying both parties'

motions for summary judgment.[4] This interlocutory cross-appeal ensued.

### Discussion and Decision

### I. Denial of Appellees' Motion for Summary Judgment

Appellees contend that the trial court erred in denying their motion for summary judgment.

Our summary judgment standard of review is well settled. Upon review of the grant or denial of a motion for summary judgment, we apply the same legal standard as the trial court. Summary judgment shall be granted if the designated evidence shows that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. We will resolve any doubt as to fact or inference to be drawn from the evidence in favor of the party opposing the motion. Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts.

*Indiana Dep't of Fin. Insts. v. Worthington Bancshares, Inc.*, 728 N.E.2d 899, 901–02 (Ind.Ct.App.2000) (some citations omitted), *trans. denied.* "The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 551 (Ind. Ct.App.2003) (citation omitted).

Specifically, Appellees contend that the trial court should have determined that they were immune from liability under the Indiana Tort Claims Act ("the Act"). The Act "allows suit against government entities for torts committed by their agencies or employees, but grants immunity under the specific circumstances enumerated in [Indiana Code Section] 34–13–3–3." *Gibson v. Evansville Vanderburgh Bldg. Comm'n*, 725 N.E.2d 949, 952 (Ind.Ct.App.2000), *trans. denied.* "[W]hether a governmental entity is immune from liability under the Act is a question of law for the courts, although it may include an extended factual development." *Minks v. Pina*, 709 N.E.2d 379, 382 (Ind.Ct.App.1999), *trans. denied* (2000).

> The essential inquiry is whether the legislature intended acts such as those challenged to enjoy immunity. Because the Act is in derogation of common law, it is narrowly construed against the grant of immunity. The party seeking immunity bears the burden of proving that its conduct falls within the Act and is, thus, shielded from liability.

*Gibson*, 725 N.E.2d at 952–53 (citations omitted). "Immunity assumes negligence but denies liability. The purpose of immunity is to ensure that public employees are able to perform their duties without threat of civil litigation." *Worthington Bancshares*, 728 N.E.2d at 902. If immunity

---

4. In the statement of the case and conclusion sections of their original brief, Appellants assert that the trial court erred in denying their motion to strike. Appellants cite no authority for their suggestion that once a motion for summary judgment is directed toward a particular defendant, the remaining defendants may not join that defendant in a memorandum that both responds to the plaintiff's motion and supports a motion for summary judgment on behalf of all defendants.

exists, Appellees simply are not liable; the degree of their culpability and the nature of their tortious conduct are not relevant considerations. *Bd. of Comm'rs of County of Harrison v. Lowe,* 753 N.E.2d 708, 711 (Ind.Ct.App.2001), *trans. denied* (2002).

■ Indiana Code Section 34–13–3–3 reads in pertinent part,

> A governmental entity of an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> . . . .
>
> (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

Appellees contend that Appellants' losses resulted from Appellees' failure to enforce laws prohibiting Health Care 2000 from operating as an HMO without a certificate of authority and that they are therefore immune from liability.[5] We agree.

Our supreme court has explained that "the scope of 'enforcement' is limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Mullin v. Mun. City of S. Bend,* 639 N.E.2d 278, 283 (Ind.1994). Effective July 1, 1994, Indiana

Code Section 27–13–2–2 provided that "[a] person may not establish or operate a health maintenance organization without obtaining a certificate of authority under this article." Effective July 1, 1994, Indiana Code Section 27–13–28–4 provided that the DOI commissioner "may issue an order directing: (1) a health maintenance organization; or (2) a representative of a health maintenance organization; to cease and desist from engaging in any act or practice that violates this article." Also as of that date, Indiana Code Section 27–13–28–5 provided, "In the case of a violation of this article, if the commissioner elects not to issue a cease and desist order, or in the event of noncompliance with a cease and desist order issued under [Indiana Code Section 27–13–28–4], the commissioner may institute a proceeding to obtain injunctive relief or other appropriate relief in the Marion County circuit court."[6]

In their complaint, Appellants alleged that Health Care 2000 was "grossly underfunded" and "negligently managed" and that as a result of its alleged misappropriation of funds, they "lost their premium payments(s) and, in addition, have suffered indebtedness for medical services provided (that would otherwise have been covered by insurance) and mental or emotion[al] distress from these losses[.]" Appellants' App. at 55. The DOI commissioner never

---

5. Indiana Code Section 34–13–3–3(11) shields a governmental entity or employee from liability if a loss results from "[t]he issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law." Since Appellees mention this provision only in passing, we do not address its applicability here.

6. Indiana Code Sections 27–13–28–4 and –5 provide that the commissioner "may" take certain actions to halt illegal conduct. "The term 'may' in a statute ordinarily implies a

permissive condition and a grant of discretion." *Romine v. Gagle,* 782 N.E.2d 369, 380 (Ind.Ct.App.2003), *trans. denied.* Consequently, we reject Appellants' argument that Appellees violated the law and their own policies and are therefore not entitled to immunity under the Act. The statutes cited by Appellants that contain the mandatory term "shall," namely Indiana Code Sections 27–1–3–20, 27–13–12–2, and 27–13–23–3, relate to the issuance of a certificate of authority (which was not issued in this case) and the requirement that an HMO open its books and records for examination.

issued a cease and desist order or sought to obtain injunctive relief once it was learned that Health Care 2000 was illegally operating as an HMO without a certificate of authority. If the commissioner had enforced the law, then Health Care 2000 would have ceased operating as an HMO, thereby preventing Appellants' alleged losses.

Appellants rely on *Drake v. Mitchell Community Schools,* 628 N.E.2d 1231 (Ind.Ct.App.1994), *aff'd in relevant part,* 649 N.E.2d 1027 (Ind.1995), to support their contention that Appellees had an independent duty to warn them of Health Care 2000's illegal activities. Appellants' Br. at 14. In *Drake,* a student contracted histoplasmosis "as a result of being exposed to pigeon droppings in [a] grain elevator" that was used as a haunted house. *Drake,* 628 N.E.2d at 1233. The defendant school claimed immunity under the Act for its " 'failure to make an inspection, or making an inadequate or negligent inspection' " of the grain elevator. *Id.* at 1233–34 (quoting what is now Ind.Code § 34–13–3–3(12)). The *Drake* court noted that Indiana law imposes on school authorities a duty to exercise reasonable care for the safety of their students and that the plaintiff's injuries "were not caused by any failure to make an inspection or by an inadequate or negligent inspection. The inspection revealed that the grain elevator posed a risk to the students' health." *Id.* at 1234. In holding that the school was not entitled to immunity under the Act, the *Drake* court concluded, "Under the particular facts of this case, the School's knowl-

edge of the specific danger in question, and accordingly, its duty to exercise reasonable care to protect its students from this danger, was independent of any duty it may have had to inspect the grain elevator." *Id.* at 1234–35.

■ We believe that Appellants' reliance on *Drake* is misplaced. Here, Appellants' alleged losses resulted from Appellees' failure to shut down Health Care 2000 once they learned that it was operating without a certificate of authority, not from Appellees' subsequent failure to warn Appellants of Health Care 2000's illegal activities. In other words, Appellees' duty to enforce the law encompassed any subsequent duty to warn.[7] *See Minks,* 709 N.E.2d at 383 (holding that police officers were entitled to immunity for failing to arrest intoxicated driver who later collided with plaintiff's vehicle; "[W]e decline to establish a bright line rule that any actions after an officer determines not to arrest an individual are no longer considered enforcement."). To conclude that an independent duty to warn existed in this case would be to eviscerate the Act's law enforcement immunity provision.

Our supreme court recently stated that case law has held that the [Act] expresses a legislative policy to protect the State's finances and also to ensure " 'that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.' "

7. Appellants also contend that Appellees had a corresponding duty to investigate Health Care 2000, but there is no evidence that Appellants' losses resulted from Appellees' act or omission in this regard. Indeed, Appellees knew that Health Care 2000 was operating illegally and that their application for a certificate of authority was deficient in many re-

spects. Accordingly, we are unpersuaded by Appellants' reliance on *Mobile Enterprises, Inc. v. Conrad,* 177 Ind.App. 475, 380 N.E.2d 100 (1978), and *Department of Commerce v. Glick,* 175 Ind.App. 449, 372 N.E.2d 479 (1978), neither of which addresses governmental immunity under the Act, let alone immunity for failing to enforce a law.

*King v. Northeast Security, Inc.,* 790 N.E.2d 474, 483 (Ind.2003) (citations omitted). Here, Deputy Commissioner Reddick acknowledged that the DOI did not enforce the law against Health Care 2000 so that it could "successfully apply and be licensed as an HMO[,]" whereupon its unauthorized sales of HMO policies would "basically be no harm, no fault [sic] at that point[.]" Appellants' App. at 101.[8] In other words, Appellees exercised their independent judgment not to enforce the law against Health Care 2000. Although in retrospect this judgment might appear to be less than sound, it is precisely the sort of governmental decisionmaking that the legislature sought to protect from judicial second-guessing under the Act. *See Peavler v. Bd. of Comm'rs of Monroe County,* 528 N.E.2d 40, 44 (Ind.1988) ("The policy underlying governmental immunity is the fundamental idea that certain kinds of executive branch decisions should not be subject to judicial review. The separation of powers doctrine forecloses the courts from reviewing political, social and economic actions within the province of coordinate branches of government."). Accordingly, we conclude that Appellees are entitled to immunity under Indiana Code Section 34–13–3–3(8) for failing to enforce the law against Health Care 2000 and that the trial court erred in denying their motion for summary judgment on this ground.[9]

Appellants also contend, however, that Appellees misled them regarding Health Care 2000's licensing status. We disagree. The record establishes that Appellees consistently stated in response to inquiries that Health Care 2000 "[did] not hold a certificate of authority to act as an insurance company or a health maintenance organization (HMO)"; that Health Care 2000 "[had] applied to the Department of Insurance for a certificate of authority to act as an HMO"; that the DOI was "reviewing the application"; and that Health Care 2000 "[was] not authorized to operate as an HMO until a certificate of authority is issued." Appellants' App. at 157 (letter from DOI Attorney Amy Strati); *see also id.* at 165–168, 171–72 (letters from Strati containing similar language and stating,

---

8. As Chief Counsel Polichene explained, "[C]learly it would be better for the enrollees if [Health Care 2000] did meet the requirements of the [licensing] statute and if they did have the financial resources that they stated that they have and they were qualified to do business. Then that would be better than thousands of people without insurance, finding out that they don't have the insurance they thought they had." Appellants' App. at 146.

9. Appellants contend that Appellees "in their individual capacities are not proper parties to these appellate proceedings" and further contend that Appellees have "failed to address how the Commissioners' conduct, for example, in attempting to find alternate insurance carriers to voluntarily enroll the Plaintiff Class, and in failing to warn the Plaintiff Class of known dangers, are actions connected with the performance of their duties under the insurance statutes." Appellants' Reply Br. at 7. Appellants cite no authority to support the former contention. With respect to the latter, we note that Appellants did not allege that their losses resulted from the Commissioners' attempt to find alternate insurance carriers, and we have already determined that Appellants' alleged losses resulted from Appellees' failure to enforce the law. We observe that a government employee's allegedly negligent act or omission cannot be considered outside the scope of that employee's employment simply because it is negligent. Given our resolution of this issue, we need not address Appellees' contention that they are entitled to immunity under Indiana Code Sections 27–1–3–1 (exempting DOI commissioner and employees from liability in their individual capacity "for any act done or omitted in connection with the performance of their respective duties") and 34–13–3–5(c) (providing that "[a] lawsuit filed against [a government] employee personally must allege that an act or omission of the employee that causes a loss is: ... (2) clearly outside the scope of the employee's employment").

"Any information received will be considered in the review of [Health Care 2000's] pending application."). Appellants' characterization of Health Care 2000's application as so deficient that it was always "pending denial" disregards the fact that Appellees never misled the public as to Health Care 2000's licensing status.[10]

In summary, we reverse the trial court's denial of Appellees' motion for summary judgment and remand with instructions to enter judgment in favor of Appellees with respect to Counts VII, VIII, IX, and X of Appellants' third amended complaint.

## II. Denial of Appellants' Motion for Partial Summary Judgment

In their original brief, Appellants contend that Appellees have failed to establish that they are entitled to immunity under the Act and that therefore we "should direct that judgment be entered against the [DOI] on the issue of liability." Appellants' Br. at 15. We disagree. It is not enough for Appellants to argue that Appellees are not entitled to immunity under the Act and are therefore not entitled to summary judgment; Appellants must also establish as a matter of law with respect to each of their claims that Appellees owed them a duty of care; that Appellees breached that duty; and that the breach proximately caused their damages. *See Smith v. Standard Life Ins. Co. of*

*Indiana*, 687 N.E.2d 214, 217 (Ind.Ct.App. 1997) (listing elements of negligence claim). This Appellants have failed to do. We therefore affirm the trial court's denial of Appellants' motion for partial summary judgment.

Affirmed in part and reversed and remanded in part.

ROBB, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

During the some four years that Health Care 2000 operated without authority and collected premiums from unsuspecting and innocent policy purchasers, DOI had full access to the nature of the operation and the lack of financial stability of the HMO. It certainly had the investigative tools and authority to acquire the very information which in 1997 led the Marion Circuit Court to liquidate Health Care 2000. The conduct, or lack thereof, by DOI is indefensible. It is nevertheless insulated against civil liability by I.C. § 34–13–3–3(8), and for this reason, I concur in the reversal of the trial court's denial of Appellees' motion for summary judgment.

---

**10.** In support of their motion for partial summary judgment, Appellants designated the affidavit of Frank Mendyke, who stated that in June 1997 he had "contacted the [DOI] by phone inquiring into health insurance companies within the state of Indiana[.]" Appellants' App. at 212. Mendyke spoke with a "female representative" of the DOI who "suggested that [he] contact Health Care 2000 ... for insurance[.]" *Id.* Mendyke stated that "[u]pon this recommendation of the [DOI], [he] was lead [sic] to believe that Healthcare 2000 was a licensed and reputable health insurance dealer" and subsequently "obtained health insurance from Health Care 2000 for [his] wife." *Id.* Assuming, *arguendo,* that the

DOI representative's suggestion can be considered a misrepresentation, as Appellants contend, we note that Indiana Code Section 34–13–3–3(14) shields a governmental entity or employee from liability if a loss results from "[m]isrepresentation if unintentional." Regardless of whether the misrepresentation was unintentional, we conclude that Mendyke's affidavit is insufficient to create a genuine issue of material fact because it does not allege that he (or any other member of the plaintiff class) suffered any loss as a result of this misrepresentation. Consequently, we need not address Appellees' contention that the DOI representative's statement is inadmissible hearsay.